<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| J.H., | : | **Civil Action No. 25-13109 (SRC)** |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF | : |  |
| SOCIAL SECURITY, | : |  |
| Defendant. | : |  |
|  | : |  |

<u>**CHESLER, District Judge**</u>

This matter comes before the Court on the appeal by Plaintiff J.H. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act").  This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be vacated and remanded.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability starting on March 12, 2019.  A hearing was held before ALJ Sharon Allard (the "ALJ") on March 12, 2024, and the ALJ issued an unfavorable decision on June 28, 2024.  Plaintiff sought review of the unfavorable decision from the Appeals Council.  After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of June 28, 2024, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform light work, with certain exertional and nonexertional limitations. At step four, the ALJ also found that Plaintiff was able to perform his past relevant work as a corrections officer. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

Plaintiff makes three arguments on appeal: 1) at step four, the ALJ failed to evaluate the treating physician's opinion as mandated by 20 C.F.R. § 404.1520c and engaged in impermissible cherry-picking of the evidence of record; 2) at step four, the ALJ substituted her own lay opinion for the opinions of the medical experts; and 3) at step two, the ALJ erred as to the severity of Plaintiff's migraines. Because this Court finds that the residual functional capacity determination is not supported by substantial evidence, it need not reach the arguments about step two and 20 C.F.R. § 404.1520c.

At step four, the ALJ determined that Plaintiff retains the residual functional capacity for light work, with certain additional exertional and nonexertional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can push or pull up to 10 pounds occasionally; he can stand or walk for 6 hours in an 8 hour work day; he can sit for 6 hours in an 8 hour work day; he can occasionally climb ramps and stairs; he can balance on wet, moving, or uneven surfaces; he can kneel, stoop, and crouch; he can engage in frequent reaching and handling; he can occasionally reach overhead with the right dominant upper extremity; he cannot crawl; he cannot climb ladders, ropes, or scaffold; he cannot work around hazards, including moving mechanical parts, or unprotected heights; he can have occasional concentrated exposure to extreme colds or vibration; and he will be off task 10% of the workday due to the impairments.

(Tr. 22.)

2

The ALJ began the discussion of the evidence at step four by finding that the claimant's statements about the limiting effects of his symptoms were not "not entirely consistent with the medical evidence." (Tr. 23.) Next, the ALJ summarized roughly four years (2019-2023) of treatment records from Mercer Bucks Orthopedics. (Tr. 24-25.) In this summary, the ALJ described some of the findings from a report of an MRI exam of the spine done on April 13, 2023, but did not reference the concluding "Impression" paragraph, which states:

> Subjectively relatively severe degenerative pathology, significantly worsened from 2012. Extensive multilevel disc osteophytic bulges/protrusions are noted along with some dorsal ligamentous infolding as well as what appears to be thickening of the posterior longitudinal ligament contributing to generalized canal stenosis and cord impingement from about C2-C3 to about C6-C7, with narrowing of the canal and cord impingement not only at however between the disc spaces. Findings are generally worst at C5-C6 where there is moderate cord impingement and moderate to severe appearing thecal sac stenosis. There is however no definite cord signal abnormality. Would suggest this patient consult a surgeon as indicated.

(Tr. 1378.) Nor did the ALJ reference the records of the two cervical interlaminar steroid injections performed on June 2 and August 4, 2023. (Tr. 1386, 1385.) Nor did the ALJ reference the record of an MRI arthrogram of the shoulder done on May 12, 2023, which reported a perforation of the infraspinatus tendon and a tear of the supraspinatus tendon. (Tr. 1376.) The ALJ stated that, on the claimant's most recent visit to his orthopedist, dated November 29, 2023, "the claimant was still experiencing pain in the neck and bilateral shoulder region with paresthesia in his hands." (Tr. 25.) The medical record from that visit also states:

> He has again noticed some increasing numbness in his hands with increased activity. This may be due to the fact that the cortisone in the cervical spine may be slowly wearing off. He continues with difficulty with his right shoulder with any sort of every day daily activity as well as overhead motion and reaching behind his back. . .
>
> Again at this point he has been permanently disabled in regards to his right

3

shoulder as his right shoulder pain is chronic and waxes and wanes in nature.

(Tr. 992-993.)  The medical record from that visit also states the following diagnoses:

1. Cervical radiculopathy
   M54.12: Radiculopathy, cervical region
2. Full thickness rotator cuff tear- Right
   M76.121: Complete rotator cuff tear or rupture of right shoulder, not specified as traumatic.
3. Impingement syndrome of left shoulder region
   M75.42 Impingement syndrome of left shoulder
4. Impingement syndrome of right shoulder region
   M75.47 Impingement syndrome of right shoulder
5. Neck pain
   M54.2 Cervicalgia
6. Pain of left shoulder joint
   M26:512 Pain in left shoulder
7. Pain of right shoulder joint
   M26.511 Pain in right shoulder
8. Paresthesia of upper limb
   R20.2 Paresthesia of skin
9. Shoulder joint pain- Right
   M25.519 Pain in unspecified shoulder

(Tr. 993.)

The ALJ next reviewed the medical opinion evidence as follows.  First, the ALJ stated that the opinions of the state agency reviewers were not "fully persuasive," and the ALJ opined that "the overall record evidence that is available for review is more consistent with the finding that the claimant is more restricted than DDS found."  (Tr. 25.)   Next, the ALJ reviewed a physical therapy occupational evaluation by Mr. Melnyk, but found it not persuasive due to internal inconsistency and that the author was not an approved medical source.  (Tr. 25.)

Next, the ALJ reviewed the opinion of the claimant's treating physician, Dr. Armbruster, but found it only "partially persuasive" because, the ALJ opined, it was "not supported by record evidence."  (Tr. 25.)  In Dr. Armbruster's report, dated July 6, 2023, Dr. Armbruster gave

diagnoses of right "RTC tear" and left "shoulder pain," rated manipulative limitations as rarely able to perform reaching and occasionally able to perform handling and fingering, noted a history of two previous surgeries of the right shoulder, and stated clinical observations of limited right shoulder range of motion, weakness, and pain with motion.  (Tr. 971-72.)

Having discounted every medical opinion of record, the ALJ concluded the analysis at step four without any further discussion of what medical evidence supported the residual functional capacity determination.  To be clear, at no point in the ALJ's opinion did she articulate the evidentiary support for her assessment of Plaintiff's exertional residual functional capacity.

Plaintiff challenges the ALJ's determination at step four on several grounds, including "cherry-picking the record" and "substituting [the ALJ's own] lay judgment to determine [Plaintiff's] physical limitations."  (Pl.'s Br. at 8.)  As to the second point, Plaintiff argues that the ALJ made an RFC determination with no basis in the medical opinions of record, and that, absent such a basis, the ALJ must have substituted her own lay opinion for the opinions of medical experts.

Broadly, this Court agrees that, because the ALJ discounted every opinion of every medical expert, the RFC determination does not appear to be supported by substantial evidence. In short, at step four, the ALJ announced a detailed, complex RFC formulation in the subheading, but the discussion that follows does not appear to connect any component of that formulation to evidence of record that supports it.  The discussion fails to point out the evidence of record that supports the conclusion that the claimant retains the capacity to perform light work, with certain additional limitations.

This view gains additional support from the Commissioner's opposition brief. That brief devotes five pages to arguing that substantial evidence supports the Commissioner's RFC determination, but, in those five pages, there is not one citation to any specific piece of medical evidence in the record. This Court has read many opposition briefs from the Commissioner in appeals of Social Security cases, and, as a general rule, when a plaintiff argues a lack of substantial evidence in support of a determination, the Commissioner's opposition briefs point to at least some evidence of record that supports the ALJ's conclusions – but not in this case.

The Court concludes that Plaintiff is correct and that the ALJ's residual functional capacity determination is not supported by substantial evidence. The ALJ stated reasons for discounting every opinion of every medical expert. The problem is that, in the end, there is no identified substantial medical evidence to support the RFC determination at step four – nor is such evidence apparent to this Court. The ALJ offers very little more than her lay opinion that none of the medical experts is persuasive, and that alone does not constitute substantial evidence that supports the RFC determination.

An ALJ's lay medical opinion does not constitute substantial evidence. "[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence." Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999). However, "an ALJ may not make speculative inferences from medical reports." Id. at 429. An ALJ may also not "employ her own expertise against that of a physician who presents competent medical evidence." Id.; Masher v. Astrue, 354 F. App'x 623, 627 (3d Cir. 2009); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that

6

of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").  The Third Circuit has stated:

> In other words, shorn of its rhetoric, the ALJ's conclusion that appellant is capable of engaging in sedentary activity is merely a function of the ***ALJ's own medical judgment***. As such, his conclusion may not be permitted to stand, for we have pointed out time and again that these kinds of judgments are not within the ambit of the ALJ's expertise.

Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1983) (emphasis added).

Plaintiff argues that the ALJ engaged in "cherry-picking" of the medical record.  See Rios v. Comm'r of Soc. Sec., 444 F. App'x 532, 535 (3d Cir. 2011) ("The ALJ was not 'cherry-picking' or ignoring medical assessments that ran counter to her finding.")  As the discussion above has shown, the ALJ in this case did appear to ignore medical evidence that ran counter to her findings, especially in regard to the extensive treatment records from Mercer-Bucks Orthopaedics.

Plaintiff has succeeded in demonstrating that the residual functional capacity determination at step four is not supported by substantial evidence.  This Court finds that the Commissioner's decision is not supported by substantial evidence and will be vacated.  This case will be remanded to the Commissioner for further proceedings in accordance with this opinion.

  s/ Stanley R. Chesler<br>
STANLEY R. CHESLER, U.S.D.J.

Dated: July 16, 2026

7